**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| G. NEIL GARRETT, D.D.S., P.C., on behalf of plaintiff and the class members defined herein, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )    No. 13 C 7965 |
| | ) |
| NEW ALBERTSON'S, INC., doing business as Jewel-Osco, and JOHN DOES 1-10, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the court is the motion of defendant New Albertson's, Inc. ("New Albertson's") to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to dismiss Counts II through V pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff, G. Neil Garrett, D.D.S., P.C., is an Illinois professional corporation. It alleges that on November 5, 2013, defendant New Albertson's, doing business as Jewel-Osco, sent it via facsimile machine an unsolicited advertisement for the Jewel-Osco pharmacy. Plaintiff, who seeks to represent a class, claims that in sending the unsolicited fax, New Albertson's and the "John

Doe" defendants--agents of New Albertson's who are alleged to have been involved--violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227.[1]   The First Amended Complaint also alleges state-law claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Consumer Fraud Act") (Count II); conversion (Count III); private nuisance (Count IV); and trespass to chattels (Count V).

New Albertson's moves to dismiss the First Amended Complaint for lack of jurisdiction.  In the alternative, it moves to dismiss plaintiff's state-law claims for failure to state a claim.

## DISCUSSION

### A.   Rule 12(b)(1)

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff.  Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993).  The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists.  Id.

---

[1]   The TCPA makes it "unlawful for any person . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," with some exceptions.  47 U.S.C. § 227(b)(1)(C).

New Albertson's argues that because it made a settlement offer that provided plaintiff with "everything it would be entitled to had it prevailed in this action" and the offer was made before plaintiff filed a motion for class certification regarding New Albertson's, this lawsuit is moot. (Def.'s Mem. in Supp. of Mot. to Dismiss at 3.) The doctrine of mootness stems from Article III of the United States Constitution, which limits the subject matter jurisdiction of federal courts to live cases or controversies. Damasco v. Clearwire Corp., 662 F.3d 891, 894-95 (7th Cir. 2011) (citing, inter alia, Spencer v. Kemna, 523 U.S. 1, 7 (1998)). "The doctrine demands that the parties to a federal case maintain a personal stake in the outcome at all stages of the litigation." Damasco, 662 F.3d at 894-95. "[O]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." Id. at 895 (quoting Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)).

Plaintiff filed its original complaint in this action on November 6, 2013 against "Albertson's, LLC" and the John Does. Along with the complaint, plaintiff filed a motion for class certification. Albertson's, LLC was served with the complaint on November 8, 2013. Apparently, Albertson's, LLC was not the correct defendant, because on November 21, 2013, plaintiff's counsel

received an e-mail from counsel for "New Albertson's, Inc." The e-mail states: "We represent New Albertson's Inc. and we have received information that G. Neil Garrett, D.D.S., P.C. may have received an unsolicited facsimile advertisement sent by or on behalf of New Albertson's Inc. Therefore New Albertson's Inc. makes the settlement offer to G. Neil Garrett, D.D.S., P.C. which is contained in the attached letter. . . . " (Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. B.) The attached three-page letter contained the settlement offer. (Def.'s Mem. in Supp. of Mot., Ex. A.) The parties disagree about whether the offer provided plaintiff complete relief. Plaintiff did not accept the offer, and thereafter, on November 25, 2013, it filed the First Amended Complaint, substituting New Albertson's as the defendant, and an amended motion for class certification.

New Albertson's contends that "before Plaintiff even named New Albertson's as the defendant in this action, and before Plaintiff moved to certify a class as to New Albertson's, Inc.," it made a complete offer of relief to plaintiff, thereby mooting plaintiff's claims. (Def.'s Mem. in Supp. of Mot. at 2-5.) In support of its motion, New Albertson's cites Damasco. Damasco had filed a putative class-action suit for violation of the TCPA, but before he moved for class certification, the defendant offered him his full request for relief. The Seventh Circuit agreed with the district

court and the defendant that the offer mooted Damasco's claim and
therefore ended the putative class action.  662 F.3d at 895-97.

In our view, <u>Damasco</u> does not apply to the instant case.
<u>Damasco</u> is premised on the principle set forth in <u>Rand</u>, 926 F.2d at
598, that "once the *defendant* offers to satisfy the plaintiff's
entire demand, there is no dispute over which to litigate."  662
F.3d at 895 (emphasis added).  Here, as New Albertson's itself
repeatedly emphasizes in its briefs, New Albertson's was not yet a
defendant to this action when it made its offer to plaintiff.
(<u>See, e.g.</u>, Def.'s Reply at 1 ("[New Albertson's] made a complete
settlement offer to Plaintiff prior to the time that Plaintiff even
filed a lawsuit against New Albertson's.").)  There was not yet a
demand directed to New Albertson's for it to offer to satisfy.  And
an offer to "pay only what [the defendant] thinks might be due"
does not render a plaintiff's case moot.  <u>Scott v. Westlake Servs.
LLC</u>, 740 F.3d 1124, 1126 (7th Cir. 2014) (discussing <u>Damasco</u> and
further remarking: "The plaintiff's stake is negated only if no
additional relief is possible. . . . To hold otherwise would imply
that any reasonable settlement offer moots the plaintiff's case or
that long-shot claims are moot rather than unlikely to succeed.").

Our conclusion is bolstered by the Court of Appeals's response
in <u>Damasco</u> to the plaintiff's concern about allowing "buy-offs" to
frustrate the objectives of class actions.  The Court remarked:

Damasco starts by highlighting that the Supreme Court and this court have emphasized the importance of preventing individual buy-offs from mooting class actions. For example, the Supreme Court has held that defendants cannot prevent an appeal from a denial of certification simply by offering relief to a named plaintiff. The Court reasoned that the alternative—requiring numerous plaintiffs to file separate actions in order to prevent them from being picked off before appellate review of certification—"would frustrate the objectives of class actions" and "invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement." Along the same lines, we have long held that a defendant cannot moot a case by making an offer *after* a plaintiff moves to certify a class, observing that otherwise the defendant could delay the action indefinitely by paying off each class representative in succession.

662 F.3d at 895 (brackets, internal quotation marks, and citations omitted). The Court of Appeals declined to grant Damasco's request that it create an exception to the mootness doctrine in potential class actions where defendants offer relief to named plaintiffs before they have a "reasonable opportunity" to seek certification, but the Court did identify a "simple solution to the buy-off problem" that did not require it to "forge a new rule that runs afoul of Article III." Id. at 895-96. The Court explained that "[c]lass-action plaintiffs can move to certify the class at the same time that they file their complaint" and that "[t]he pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." Id. at 896. "[A]ny class member following in Damasco's footsteps can avoid" the buy-off problem "simply by moving to certify a class when filing suit," and the Court

"discern[ed] no other obstacle that would moot a case like Damasco's before a judge could rule on certification." Id. at 897.

New Albertson's ignores this aspect of the Damasco analysis entirely. It would have us extend Damasco to parties that are not yet named defendants and apply only part of the case--to allow an individual buy-off to moot a class action in this case--without affording plaintiff any opportunity whatsoever to protect itself from a buy-off attempt. That would be unfair. Defendant's motion to dismiss this action as moot will be denied.

**B.** **Rule 12(b)(6)**

Should its Rule 12(b)(1) motion be denied, New Albertson's moves in the alternative under Rule 12(b)(6) to dismiss Counts II through V of the First Amended Complaint for failure to state a claim.

**1.** **Illinois Consumer Fraud Act (Count II)**

The Illinois Consumer Fraud Act is a statute intended to protect consumers, borrowers, and businesspersons against fraud, unfair methods of competition, and other unfair or deceptive business practices. Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002). Recovery may be had for unfair as well as deceptive conduct. Id. To show that something is an unfair practice under the Consumer Fraud Act, the practice must offend public policy; be immoral, unethical, oppressive, or

unscrupulous; and/or cause substantial injury to consumers.  Id. at
961.  All three criteria do not need to be satisfied to support a
finding of unfairness.  A practice may be unfair because of the
degree to which it meets one of the criteria or because to a lesser
extent it meets all three.  Id.

New Albertson's argues that plaintiff has failed to plausibly
allege that defendant's conduct amounted to an unfair practice
under the Consumer Fraud Act.  In support of its argument, New
Albertson's cites case law from this district, including our
decision in Western Railway Devices Corp. v. Lusida Rubber
Products, Inc., No. 06 C 52, 2006 WL 1697119 (N.D. Ill. June 13,
2006) (Grady, J.).  In that case, which involved similar
allegations, we held that although the practice of sending
unsolicited faxes arguably offends public policy, it is not
sufficient to state a claim for violation of the Consumer Fraud Act
because of the lack of oppressiveness or substantial injury.  2006
WL 1697119 at *4-7.

In its response, plaintiff acknowledges Western Railway, Pl.'s
Resp. at 7 n.2, but notes that there is split of authority in the
Northern District of Illinois on this issue.  Our view has not
changed since Western Railway, and we adopt that decision's
reasoning.  We conclude that plaintiff has failed to allege
oppressiveness or substantial injury to consumers and that the
degree to which the sending of a "junk fax" offends public policy

is insufficient to state a claim under the Consumer Fraud Act. Accordingly, Count II will be dismissed.

## 2. Conversion (Count III) and Trespass to Chattels (Count V)

New Albertson's also asserts that plaintiff has failed to state a claim for conversion under Illinois law because the damages that plaintiff allegedly suffered must be more than *de minimis*, and "'*de minimis*' is the best and only way to describe receiving a single fax transmission." (Def.'s Mem. in Supp. of Mot. at 7.) New Albertson's cites several cases from this district in which our colleagues have dismissed junk-fax conversion claims as insufficiently stated due to the *de minimis* nature of the alleged injury. See, e.g., Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc., 633 F. Supp. 2d 610, 613 (N.D. Ill. 2009) (Kapala, J.); Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc., 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (Shadur, J.); see also G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd., 871 F. Supp. 2d 763, 768-69 (N.D. Ill. 2012) (Kendall, J.). For its part, plaintiff cites decisions of several Illinois trial courts that have recognized conversion claims for junk faxing, as well as similar decisions in the Northern District of Illinois, see Centerline Equipment Corp. v. Banner Personnel Service, Inc., 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008) (Pallmeyer, J.); Pollack v. Cunningham Financial Group, LLC, No. 08 C 1405, 2008 WL 4874195, at *3 (N.D. Ill. June 2, 2008)

(Hibbler, J.); and <u>Sadowski v. Med1 Online, LLC</u>, No. 07 C 2973, 2008 WL 2224892, at *8-9 (N.D. Ill. May 27, 2008) (Aspen, J.).

In <u>G.M. Sign</u>, after presenting a thorough review of the applicable case law and the split in this district, Judge Kendall recognized the doctrine of *de minimis non curat lex* as a "bedrock principle of law" and concluded that "[t]he loss of a single sheet of paper and a minuscule amount of toner" is "too trivial an injury to amount to an actionable conversion." 871 F. Supp. 2d at 768. She noted that although the plaintiff had brought a putative class action, under Illinois law it could not aggregate any harm done to other similarly-situated plaintiffs without first showing that it had a valid claim in its own right. <u>Id.</u> She also rejected plaintiff's argument that it could maintain its claim because the law allows for the recovery of nominal damages, explaining that "there is a critical distinction between the concept of nominal damages and the doctrine of *de minimis non curat lex*": nominal damages might be warranted for a claim of sufficient gravity, but a claim insufficient at its inception to merit a judgment is barred as *de minimis*. <u>Id.</u> at 769. We agree with Judge Kendall's reasoning in <u>G.M. Sign</u> and that line of cases; therefore, Count III will be dismissed.

By the same token, we will dismiss Count V, which alleges trespass to chattels. Trespass to chattels is "an antiquated cause of action that has reemerged in recent years, mostly regarding

claims involving abuses of email and the Internet." <u>Lewis v. Weis</u>, No. 09 C 2219, 2012 WL 45242, at *3 (N.D. Ill. Jan. 5, 2012). Illinois case law regarding this tort is sparse, but the Illinois Supreme Court has stated that "if one [damages] or otherwise alters someone else's property except as authorized by that person, one commits a classic tort: either trespass to chattels or conversion, depending on the extent of the alteration." <u>Loman v. Freeman</u>, 890 N.E.2d 446, 461 (Ill. 2008). The two torts are on the same spectrum and differ only with respect to the extent of interference with the property owner's rights. Plaintiff's conversion claim is insufficiently stated as *de minimis*, so its trespass to chattels claim fails for the same reason, and Count V will be dismissed.

### 3. <u>Private Nuisance (Count IV)</u>

The Illinois Supreme Court defines a private nuisance as "a substantial invasion of another's interest in the use and enjoyment of his or her land." <u>In re Chicago Flood Litig.</u>, 680 N.E.2d 265, 277 (Ill. 1997). The invasion must be substantial, either intentional or negligent, and unreasonable. <u>Id.</u> The Court has "repeatedly described a nuisance as 'something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable.' Typical examples would be smoke, fumes, dust, vibration, or noise produced by defendant on his own land and impairing the use and enjoyment of neighboring land." <u>Id.</u> at 278 (citations and some internal quotation marks omitted).

New Albertson's maintains that the receipt of an unsolicited fax advertisement does not support a claim for private nuisance in Illinois. We agree. No Illinois decisions were found by this court or cited by the plaintiff that recognize a private nuisance action for interference with a fax machine and its paper, which are personal property. Along with citations to cases from other jurisdictions, which are not helpful, plaintiff cites a single Illinois appellate court decision, nearly a century old--O'Connor v. Aluminum Ore Co., 224 Ill. App. 613 (1922). O'Connor framed the issue as whether recovery "may be had on the ground that a plaintiff has suffered a personal injury or that his personal property has been damaged by a nuisance independent of and apart from any injury to real estate or the use and enjoyment thereof." Id. at 615. The case is not on point, though, because only a personal injury was involved, not damage to personal property. Plaintiff fails to persuade us that Illinois courts would extend the cause of action for private nuisance to the receipt of an unsolicited fax. Therefore, Count IV will be dismissed.

## CONCLUSION

For the foregoing reasons, the motion of defendant New Albertson's, Inc. to dismiss plaintiff's First Amended Complaint is granted in part and denied in part. The motion is denied insofar as it requests dismissal for lack of standing pursuant to Rule 12(b)(1). The motion is granted as to Counts II, III, IV, and V of

the First Amended Complaint for failure to state a claim, and those

counts are dismissed.


      DATE:        May 27, 2014


      ENTER:      _____

                John F. Grady, United States District Judge